UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| WILLIAM L. RUSSELL, | ) | No. ED CV 06-519-PLA |
|     Petitioner, | ) | |
|     v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE,[1] COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
|     Respondent. | ) | |

## I.

## PROCEEDINGS

Plaintiff filed this action on May 24, 2006, seeking review of the Commissioner's denial of his application for Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on June 14, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 7, 2007, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. Joint Stipulation, at 1.

## II.

## BACKGROUND

Plaintiff was born on November 14, 1969. [Administrative Record ("AR") at 59.] He attended school through the seventh grade, has received a G.E.D., and has past work experience as, among other things, a tile setter and a mechanic. [AR at 91, 96, 105, 110, 113.]

On April 30, 2002, plaintiff protectively filed a claim for Supplemental Security Income payments. [AR at 12, 59-61, 62-75.] Plaintiff alleged disability due to a crushed right heel and foot, and right hip joint pain. [AR at 90.] Plaintiff claimed that he has been unable to work since February 28, 2001. [AR at 59.] After his application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on July 17, 2003. Plaintiff appeared with counsel and testified on his own behalf. Testimony was also received from a third party witness. [AR at 26-37.] On July 25, 2003, the ALJ concluded that plaintiff was not disabled and thus not entitled to Supplemental Security Income payments. [AR at 11-15.] When the Appeals Council denied review on November 13, 2003, the ALJ's decision became the final decision of the Commissioner. [AR at 3-5.]

Plaintiff then filed an action in District Court challenging the Commissioner's decision. On January 11, 2005, this Court remanded the matter with instructions, among other things, to make a step five determination with the assistance of a vocational expert. [AR at 280-89.] On October 28, 2005, a hearing was held, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 316-26.] A response to a written interrogatory was provided by a vocational expert. [AR at 299.] On February 8, 2006, the ALJ once again determined that plaintiff is not disabled. [AR at 271-76.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant currently is engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The plaintiff has the burden of proving that he is unable to perform his past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy; the determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found once again that plaintiff has not engaged in substantial gainful activity since his alleged onset date (step one). [AR at 273.] At step two, the ALJ concluded that plaintiff has severe impairments as follows: "status post right calcaneus fractures in 1991 involving the heel and foot resulting in residual . . . pain and he also has degenerative joint disease with right hip joint pain." [AR at 273.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff has the residual functional capacity[2] to perform a limited range of sedentary

---

[2] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

work.[3] [AR at 273.] The ALJ concluded that plaintiff has no past relevant work (step four). [AR at 274.] The ALJ found at step five, relying on vocational expert evidence and Medical-Vocational Rule 201.27, that jobs exist in significant numbers in the national economy that plaintiff can perform, and that plaintiff is thus not disabled. [AR at 275-76.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred: 1. by not complying with the remand order to consider the effect of plaintiff's pain; 2. in misrepresenting the evidence concerning plaintiff's complaints of pain and the use of Vicodin; and 3. in not properly considering Hepatitis B and C to be a severe impairment. For the reasons stated below, the Court respectfully disagrees with plaintiff's contentions, and affirms the ALJ's decision.

**A. THE EVIDENCE**

Plaintiff testified at the first hearing that he has pain throughout his foot on one side that extends up his leg to his knee, and that the hip on the opposite side hurts him constantly. [AR at 27.] He cannot stand without significant pain without use of a cane, and has problems with loss of balance. The pain also causes problems with concentration. [AR at 27-28.] He takes Vicodin once every four hours or so for the pain, which helps take the edge off. [AR at 29.] Plaintiff spends his time at home watching television and sleeping. [AR at 33.] Plaintiff's fiancee testified that plaintiff's pain does not allow him to concentrate, and the pills that he takes make him sleep. [AR

---

[3] Sedentary work is defined as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a). Specifically, the ALJ found that plaintiff can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently. Out of an 8-hour period, he can sit for 6 hours and stand and/or walk for 2 hours. Nonexertional limitations include no climbing, kneeling, crouching, or crawling. Plaintiff cannot work at unprotected heights or around dangerous, moving machinery. He can occasionally balance and stoop. [AR at 273.]

at 35.] He has problems finishing things that he starts, and has problems with irritability. [AR at 35.]

The evidence indicates that plaintiff suffered a right calcaneus fracture in 1991 when he jumped from a second story window. [AR at 160.] Plaintiff went to an emergency room in October, 1999, complaining of left hip pain. Plaintiff indicated that the pain had been going on for approximately one year. He stated that he had been placing more weight on his left side as a result of his foot injury, and that ever since then the pain at his left hip has been getting worse. Plaintiff was diagnosed with "probable left hip degenerative joint disease," and was referred to an orthopedic surgeon. [AR at 194-95.]

Plaintiff was examined in April, 2002, and was found to be unable to put his full weight on his right foot. Various joints were found to be "blown out and absent" as a result of his old fracture. If the symptoms persist after conservative treatment, he may require surgical treatment. [AR at 220-21.] Dr. Sutpal Singh, a foot and ankle surgeon, indicated that plaintiff has "severe pain at the right ankle." [AR at 226.] There was decreased range of motion of the ankle "with dorsiflexion and plantar flexion." X-rays revealed severe degenerative joint disease at the right ankle. [AR at 226.] Dr. Singh concluded that plaintiff would need an ankle fusion in the future. [AR at 227.] In March, 2002, Dr. Singh found that plaintiff was suffering from "severe ankle and foot arthropathy and crepitus with antalgic and appropulsive gait." With a brace, plaintiff was able to ambulate without problems. [AR at 225.] Plaintiff was doing better with the brace the following month. [AR at 223.] In August, 2002, Dr. Singh indicated that plaintiff can stand and/or walk up to 2 hours out of an 8 hour day with breaks, and can sit up to six hours a day. He can lift and carry 10 pounds occasionally, and less than 10 pounds frequently. [AR at 242.] As of January, 2003, Dr. Singh diagnosed plaintiff with severe degenerative joint disease at the right ankle and subtalar joint, and indicated that plaintiff will need a triple arthrodesis and an ankle fusion. [AR at 264.]

A state agency physician concluded that plaintiff can occasionally lift 10 pounds, frequently lift less than 10 pounds, can stand and/or walk at least 2 hours in an 8 hour work day, and sit for a total of about 6 hours in an 8 hour work day. His ability to push and/or pull is limited in his lower extremities and he is occasionally limited in his ability to balance and stoop. [AR at 234-35.] He

must avoid even moderate exposure to hazards such as machinery and heights. [AR at 237.] A physician concluded that plaintiff has the capacity to perform basic sedentary work activity. [AR at 240.]

Plaintiff testified at the October 28, 2005, hearing that he has pain in his foot every day, and that it is always swollen. Because of this, he is unable to work. [AR at 316-17.] He also experiences pain in his hips. [AR at 318.] He came to the hearing with crutches, which he uses when he goes out of his house, but they were not prescribed for him by a physician. [AR at 319-21.] He was diagnosed with Hepatitis within a year of the second hearing. [AR at 323.] Because of the Hepatitis, he can no longer take Vicodin, which was the pain killer he had been using. [AR at 324.] As a result, he is in more pain, and is not taking anything for it but instead "just tough[s] it out." [Id.]

**B.    THE ALJ'S COMPLIANCE WITH THE REMAND ORDER**

Plaintiff first contends that the ALJ did not comply with the remand order that required the ALJ to consider the effects of plaintiff's pain in assessing his residual functional capacity. [AR at 288.] Instead, plaintiff argues, the hypothetical posed in writing to the vocational expert did not incorporate any pain symptoms. [Joint Stip. at 4-7; AR at 299.]   Defendant counters that the ALJ considered the evidence of plaintiff's pain, and properly rejected his testimony in this regard. The Court agrees with defendant.

First, nothing in this Court's remand order required the ALJ to accept plaintiff's pain allegations as true. Rather, the ALJ was simply instructed to consider the effects of plaintiff's pain. He did so, and concluded that plaintiff's pain has no effect on his residual functional capacity. This is not inconsistent with the Court's Order.[4]

Next, the ALJ properly considered, and rejected, plaintiff's pain allegations. Because plaintiff produced medical evidence of an underlying impairment that is reasonably likely to cause

---

[4]   The Court notes that the Appeals Council's order required the ALJ to conduct further proceedings consistent with the Court's order. [AR at 279.]  The ALJ complied.

7

the alleged symptoms, medical findings are not required to support their alleged severity. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991); see also Light v. Social Security Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("[B]ecause a claimant need not present clinical or diagnostic evidence to support the severity of his pain ... a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain."); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir.1995) (applying Bunnell to subjective physical complaints); see also Goodenow-Boatsman v. Apfel, 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms beside pain.").

The ALJ can reject plaintiff's allegations "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). The following factors may be considered in weighing a plaintiff's credibility: (1) his reputation for truthfulness; (2) inconsistencies either in the plaintiff's testimony or between the plaintiff's testimony and his conduct; (3) his daily activities; (4) his work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "General findings are insufficient." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ must state which testimony is not credible and identify the evidence that undermines the plaintiff's complaints. Id.; Benton, 331 F.3d at 1041. If properly supported, the ALJ's credibility determination is entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As an initial matter, the Court notes that the record contains evidence of plaintiff's underlying impairments, and that no clear indication of malingering is apparent. The ALJ was thus required to justify his credibility decision with clear and convincing reasons. Benton, 331 F.3d at 1040. As set forth below, the Court has considered the ALJ's reasons for the unfavorable determination, and finds that they meet this standard.

The ALJ concluded that plaintiff's "statements concerning the intensity, duration and limiting effects of [his] symptoms are not entirely credible." Instead, plaintiff's complaints "suggest a

greater level of severity than can be shown by objective medical evidence alone." [AR at 274.] The specific reasons provided by the ALJ to reject plaintiff's credibility included:

    1.    Plaintiff was diagnosed in 2002 with degenerative joint disease of the right ankle, but could ambulate without problems with an ankle brace [AR at 274; see AR at 225];

    2.    Plaintiff appeared at the second hearing with crutches, "which was an obvious affectation, and he admitted they were not prescribed for him but rather his son" [AR at 274; see AR at 319-21];

    3.    Plaintiff has not used his ankle brace in the last year and reported not taking Vicodin for his pain due to his liver condition, but rather "tough[s] . . . out" the pain [AR at 274; see AR at 324], which is inconsistent with debilitating pain symptoms;

    4.    Plaintiff's statements indicate that he does nothing but sleep and watch television, but the objective findings in the record do not support such a lifestyle [AR at 274; see AR at 33];

    5.    At the second hearing, plaintiff's hands were "grimy and grease-stained," which raised the suspicion that plaintiff was doing work on a motor vehicle; the ALJ found plaintiff's explanation for the condition of his hands was not credible [AR at 274; see AR at 313-14];

    6.    Plaintiff's medical treatment has been routine and conservative, with no surgical intervention since 1992; and

    7.    Plaintiffs earnings record shows "minimal interest in and attachment to work . .. He evinces no motivation to return to any kind of work." [AR at 274.]

These are valid reasons to reject plaintiff's testimony of debilitating pain. First, the absence of objective evidence to support the severity of plaintiff's complaints can be a valid reason to reject credibility -- as long as there are other reasons to reject those complaints. "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler,

751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986)); see also Bunnell, 947 F.2d at 345-47 (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added). Thus, the ALJ properly could consider the intensity of plaintiff's alleged pain in comparison with the objective medical evidence as one reason to discredit plaintiff's testimony. Here, other valid reasons were given as well.

Plaintiff's appearance at the hearing with crutches that were not prescribed to him by medical personnel is a proper reason to reject credibility. See Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly relied on claimant's testimony that was inconsistent with the medical evidence, as well as claimant's use of a cane despite no doctor indicating a cane was needed, to disregard his complaints of excess pain and fatigue). The Court also finds sufficiently convincing the ALJ's reliance on plaintiff's conservative treatment, as it is reasonable to assume that an individual experiencing the debilitating symptoms alleged by plaintiff would require more aggressive treatment than what is reflected in the record. Plaintiff has had no surgical intervention since 1992, despite a physician indicating since 2002 that he would need ankle fusion in the future. Neither was he using a brace any longer, although it had enabled him to walk without difficulty. See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (conservative medical treatment could suggest lower level of pain and functional limitation). Next, the ALJ's reference to plaintiff's poor earnings record is also a valid reason to discredit plaintiff's credibility. See Thomas, 278 F.3d at 959 (claimant's poor work history and showing of little propensity to work was a specific, clear and convincing reason to discount testimony). Finally, the inclusion by the ALJ of his observations of plaintiff's hands at the hearing does not render the decision improper. See Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). Inconsistencies between plaintiff's testimony and his activities are a valid reason to reject credibility, which the ALJ found to be the case concerning plaintiff's greasy hands and his assertion that he can do no work because of constant pain. See Thomas, 278 F.3d at 958-59.

There is no "medical evidence" to show that plaintiff suffers from pain. Rather, while plaintiff may have exhibited pain to his physician and described pain to the ALJ, pain is subjective. The ALJ properly considered, and rejected, plaintiff's allegations concerning the intensity and limiting effects of his pain. The remand order required no more than that. Neither was the ALJ required to include a condition in the hypothetical to the vocational expect that was not supported by the evidence. See Thomas, 278 F.3d at 959-60 (citing Copeland v. Bowen, 891 F.2d 536, 540-41 (9th Cir. 1988), for the proposition that hypothetical question need not include a plaintiff's subjective impairments if ALJ makes specific findings that the plaintiff is not credible). For the foregoing reasons, plaintiff has failed to establish that the ALJ improperly rejected his hearing testimony. In light of the deference afforded to the ALJ's credibility determination, the decision is affirmed in this regard.

**C.    MISREPRESENTATION OF EVIDENCE**

The evidence shows that plaintiff developed Hepatitis B and C, and as a result he was taken off Vicodin. Plaintiff contends that when the ALJ concluded that plaintiff's cessation of Vicodin, and "tough[ing] it out," is inconsistent with his complaints of debilitating pain, the ALJ misrepresented the evidence. Rather, plaintiff argues, plaintiff was unable to take Vicodin once he was diagnosed with Hepatitis. Joint Stip. at 12.

Plaintiff's argument is unavailing. First, it is undisputed that plaintiff no longer takes Vicodin for pain. [AR at 324.] Assuming that he stopped taking Vicodin because it could damage his liver, there is no evidence in the record, and plaintiff has not argued, that he now takes any medication at all for his complaints of pain or has undergone other treatment to lessen the pain. The ALJ could properly consider this lack of alternative treatment in considering the effects of plaintiff's pain on his ability to work. See Johnson, 60 F.3d at 1434 (absence of medical treatment, or conservative treatment, suggests a lower level of pain than claimed by claimant, and is a clear and convincing reason to reject excess pain testimony). In any event, this argument is really an attack on the ALJ's use of this ground to support his rejection of plaintiff's credibility. As seen in section

B above, even if this were not a clear and convincing reason to reject plaintiff's credibility, other reasons support the ALJ's conclusion.

**D.    HEPATITIS AS A SEVERE IMPAIRMENT**

Plaintiff argues that the ALJ erred in not considering plaintiff's Hepatitis to be a severe impairment, as it "indirectly elevates the Plaintiff's pain as a result of not being able to take pain medication." Joint Stip. at 17. As such, plaintiff asserts that it is a severe impairment that can "significantly diminish the plaintiff's ability to perform and sustain full time work." Joint Stip. at 18. For the reasons stated by defendant in the Joint Stipulation (see Joint Stip. at 18-19), the Court disagrees with plaintiff's analysis of this issue. First, since the ALJ found that plaintiff has severe impairments (albeit not including Hepatitis), he moved beyond step two of the sequential analysis and considered plaintiff's functional limitations based on all of the evidence, not just based on the severe limitations. See 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . , when we assess your residual functional capacity."). Next, aside from arguing that plaintiff's Hepatitis indirectly causes him pain (as he can no longer take pain medication in connection with his foot impairment), plaintiff points to no limitations on his work capacity caused by the Hepatitis. Plaintiff thus has not met his burden of showing that this impairment -- severe or not -- is disabling. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Finally, to the extent plaintiff argues that pain is the result of his Hepatitis, the ALJ properly rejected plaintiff's credibility in this regard, as discussed above.

/
/
/
/
/
/
/

## VI.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: February 23, 2007

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE